Peter P. Kozyra et al. *v.* Zoning Hearing Board of Lower Paxton Township et al. Wimbledon Court Associates, Inc., Appellant.

Argued September 10, 1984, before Judges Rogers, Craig and MacPhail, sitting as a panel of three.

*Heath L. Allen*, with him, *Gary E. French, Keefer, Wood, Allen & Rahal*, for appellant.

*C. Kent Price, Hepford, Swartz, Menaker & Morgan*, with him, *James K. Turner* and *Richard H. Wix*, for appellees.

OPINION BY JUDGE CRAIG, October 22, 1984:

Wimbledon Court Associates, Inc., developer of a proposed townhouse project in Lower Paxton Township, has appealed from an order of the Court of Common Pleas of Dauphin County which reversed the township zoning hearing board's affirmance of approvals granted by the township's planning commission and governing body (Board of Supervisors) under applicable provisions of the zoning regulations and subdivision regulations of the township.

At the heart of some crucial confusion in this case is the fact that Lower Paxton Township has taken the

commendable step of codifying its ordinances into a comprehensive codification, Part Eleven of which is entitled "Planning and Zoning Code" and contains not only *zoning provisions* adopted under article VI of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* §§601-619, 53 P.S. §§10601-10619, but also *subdivision and land development regulations* under article V, §§501-515 of the MPC, 53 P.S. §§10501-10515.

The trial judge correctly held—and the point is no longer in dispute here—that the zoning provisions of the township expressly provide for the approval of a cluster subdivision of townhouses as a conditional use in the R-1 Low Density Residence District, in which the only unconditionally-permitted use is single-family dwelling. Lower Paxton Codified Ordinances, §§1173.-03, 1193.07(j)(1), (3), (6)B.

Hence, the sole issue arises from the undisputed fact that this developer's proposed cluster subdivision plan of townhouses would provide street access to fifty-six dwelling units by a permanent cul-de-sac, contrary to the township's section 1117.04 which reads:

(a) Culs-de-sac, permanently designed as such . . . shall furnish access to not more than twenty (20) dwelling units.

The township planning commission and governing body modified that standard under the provisions of the ordinance section which is pivotal in this case, §1117.01 in article 1117, entitled "Design Standard Minimum Requirements," within the "Planning and Zoning Code" part of the ordinance codification. In its entirety, §1117.01 reads as follows:

1117.01 APPLICATION OF REGULATIONS.

The design standards and requirements outlined in this article shall be considered the

minimum standards and requirements for the promotion of the public health, safety, morals and general welfare in the Township.

Where literal compliance with the standards herein specified is clearly impractical, the Planning Commission may modify or adjust the standards to permit reasonable utilization of property while securing substantial conformance with the objectives of these *Subdivision and Land Development Regulations*. (Ord. 72-2 §4. Adopted 5-22-72.) (Emphasis supplied.)

That section, *which also is preceded by explicit cross-references to section 509 and 511 of the MPC's article V on "Subdivision and Land Development" ordinances* (53 P.S. §§10509, 10511), describes the content of that part of the township codification as "these Subdivision and Land Development Regulations" and hence allows the township's planning commission to modify standards, such as the cul-de-sac provision in the same township codification article, where "literal compliance" is "clearly impractical . . . ."

Therefore, it is quite clear that the applicable portion of the township codification—dealing with street width, alignment, grades, intersections and construction specifications, as well as with cul-de-sacs, and entitled "Design Standard Minimum Requirements"—is indeed part of the township's subdivision regulations, conforming to MPC section 503(2), 53 P.S. §10503(2), the enabling act for ordinance provisions relating to "streets in and bordering a subdivision or land development," and their "widths and grades," as well as other matters. The modification provision reflects the authority given by section 503(5) of the MPC, expressly authorizing regulations in subdivision ordinances to contain

(5) Provisions for encouraging and promoting flexibility, economy and ingenuity in the layout and design of subdivisions and land developments including provisions authorizing the planning agency to *alter* site requirements for encouraging other practices which are in accordance with modern and evolving principles of site planning and development. (Emphasis added.)

53 P.S. §10503(5)

Thus, with the erection of this townhouse subdivision having been allowable and allowed under the *zoning* provisions, what further happened here was that the planning commission and the governing body also granted approval under the *subdivision* regulations, involving the modification or alteration of the cul-de-sac standard. With respect to the number of dwelling units to be served by the cul-de-sac, that modification, rooted in subdivision regulations authorized by a separate and distinct article of the MPC, was a municipal action wholly different in nature from the variance which article IX of the MPC authorizes a zoning hearing board to grant as to "the provisions of the zoning ordinance" where there is "unnecessary hardship" due to "unique physical circumstances or conditions . . . ." MPC §912, 53 P.S. §10912.

Even if this modification provision resided wholly within zoning concepts, terminology like that used here, allowing modification where "literal compliance" is "clearly impractical," has been regarded, by the courts of other states when confronted with similar differences in language, as importing a guideline distinctly different from that with which we are familiar in relation to variances. For example, the leading New York decision, *Application of Village of Bronxville*, 1 App. Div. 2d 236, 150 N.Y.S. 2d 906 (1956),

*aff'd Bronxville v. Francis,* 1 N.Y. 2d 839, 135 N.E. 2d 724, 153 N.Y.S. 2d 220 (1956), held that the concept of "practical difficulties" was sufficiently different from the concept of "unnecessary hardship" that the former should be confined to governing area or dimensional variances only, leaving the more stringent latter term to govern variances in use as well. *See also Ivancovich v. Tucson Board of Adjustment,* 22 Ariz. App. 530, 529 P.2d 242 (1974).

Moreover, in this case the zoning variance criterion of "unnecessary hardship" is displaced, not only by the "clearly impractical" standard expressed in the township codification, but also by the criteria of MPC §503(5), authorizing alteration of "site requirements" (notably, not *use* requirements) in order to encourage practices in accordance with "modern and evolving principles of site planning and development."

Because the present issue therefore is controlled by the subdivision regulation article of the enabling statute, we must note the essential procedural point that a zoning hearing board is authorized, by section 913.1 of the MPC, 53 P.S. §10913.1, entitled "Unified Appeals," where it has jurisdiction "over a zoning matter," also to hear "all appeals . . . with respect to any municipal ordinance or requirement pertaining to the same development plan or development."

The same section 913.1 declares that the zoning hearing board "shall have no power to pass upon the nonzoning issues," but allows it only to take evidence and make a record and findings of fact, to become part of the record on appeal to court. Although the objectors here have never raised any claim that the zoning hearing board had no power to pass upon the nonzoning issue of the cul-de-sac provision and its modification—the matters at the heart of this case— the statute plainly leaves the resolution of such a non-

zoning issue outside of the jurisdiction of the board, so that we must recognize the point sua sponte.

We have already dealt with the objectors' contention that the subdivision regulation modification is essentially a zoning variance, governed by the statutory provisions and court decisions relating to zoning variances; the context of the modification provision confirms that it is part of a body of subdivision regulations adopted under different statutory authority.

The trial judge, in his opinion, described the issue as whether or not the zoning hearing board abused its discretion in approving the townhouse project design in relation to the cul-de-sac, as if the case had involved a variance committed by the MPC to the zoning board for determination. But the record here reveals that it was the planning agency and governing body who gave the approval, not the zoning hearing board, to which the matter went only as part of the review process prescribed by statute. As noted above, the MPC makes it clear that the proceeding before the board was one in which the board had the statutory power to make findings of fact as to the subdivision issue which is central here, but no power to adjudicate the propriety or validity of the modification which the planning commission and the governing body had granted.

The zoning hearing board made the required findings. In addition to finding that the cul-de-sac street was permanently designed as such (Finding 27), it found that increased traffic resulting from the proposed construction "will not create any unsafe conditions on adjoining roadways" which "are adequate to serve the increased volume," (Finding 22) and that the development "will not dominate . . . nor interfere with the development of neighboring properties," (Finding 24). Another finding declared that the gov-

erning body and the planning commission had determined that compliance with the twenty-unit cul-de-sac limitation "was clearly impractical given the cost of extending Forest Lane." Significantly, the trial judge's opinion agreed that such impracticality did exist.

With respect to whether or not it was an abuse of discretion for the zoning hearing board to "approve the modification," the trial judge, without any finding from the board or evidence before him on which to base the supposition, presumed that "one purpose of these restrictions [the twenty-unit cul-de-sac limitation] is to limit the amount of traffic that can be generated on a single street that has but one outlet." Proceeding from that hypothesis, the trial judge concluded that a modification of the twenty-unit limitation to allow fifty-six units, a 180% increase, was an abuse of discretion. The appellant developer, however, points to expert opinions which present wholly different propositions to explain the twenty-unit limitation, such as planning sources which relate that maximum to low density developments (as distinguished from townhouse developments) on the theory that low density projects—commonly single-family detached housing—may have too many individual driveways discharging vehicles into the limited circumference of the cul-de-sac. Under the latter theory, with the number of driveways as the key factor, the percentage increase in the number of units could be relatively unimportant. We choose neither rationale as correct; at this juncture, like the trial judge, we have no record basis on which to make such a choice.

Because the sole issue presented in this case is a matter of subdivision regulation modification or alteration to be decided solely by the court under section 913.1 of the MPC, 53 P.S. §10913.1, we can comply

with that clear procedural provision of the MPC only by vacating the present decision and remanding this case to the trial court, to review the modification granted by the planning commission and the governing body in the light of the findings which the zoning hearing board has made.

Although a trial judge clearly has discretion to refuse to take additional evidence in reviewing zoning hearing board decisions with respect to zoning matters, in this case, with the purpose of the cul-de-sac limitation and its relationship to various kinds of development being thus far considered without any record evidence on the point, the remand order appropriately must direct that the trial judge receive evidence on the subdivision modification issues only, or if the trial judge deems it best, remand the case to the zoning hearing board to receive such evidence and make additional findings of fact, so that the trial judge in accordance with the MPC may make the final decision concerning the propriety of the subdivision regulation modification.

ORDER

Now, October 22, 1984, the order of the Court of Common Pleas of Dauphin County, dated March 22, 1984, is vacated, and this case is remanded to the trial court to review, pursuant to §§503 and 913.1 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§10503, 10913.1, and other pertinent provisions, the modification and approval granted to the application of Wimbledon Court Associates, Inc., considering the findings heretofore made by the Zoning Hearing Board of Lower Paxton Township, together with such additional findings as the trial judge may make on the basis of additional evidence to be received by him, or on the

basis of additional findings to be made by the Zoning Hearing Board of Lower Paxton Township pursuant to the trial court's alternative election to remand this case to that board for the purpose of receiving additional evidence and making such additional findings.

Jurisdiction relinquished.